IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 10-0117 SI |
| ELECTROGRAPH SYSTEMS, INC., *et al.*,<br>   Plaintiffs,<br>   v.<br>EPSON IMAGING DEVICES CORP., *et al.*,<br>   Defendants. / | **ORDER DENYING MITSUI TAIWAN'S MOTION TO DISMISS** |

Currently before the Court is defendant Mitsui Taiwan's motion to dismiss the first amended complaint ("FAC") of plaintiffs Electrograph Systems, Inc. and Electrograph Technologies Corp. (collectively, "Electrograph"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for February 3, 2012. Having considered the arguments presented in the moving papers, the Court hereby DENIES Mitsui Taiwan's motion.[1]

This is Mitsui Taiwan's second motion to dismiss Electrograph's complaint. The Court granted its first motion, finding that the allegations in Electrograph's original complaint were insufficient to support personal jurisdiction over Mitsui Taiwan. *See* Order Granting Defendant Mitsui Taiwan's Motion for Judgment on the Pleadings and for Dismissal, Master Docket No. 3395 (August 29, 2011).

---

[1] The Court GRANTS Mitsui Taiwan's unopposed request for judicial notice.

In response, Electrograph filed an amended complaint, which includes additional allegations against Mitsui Taiwan. Mitsui Taiwan now renews its argument that personal jurisdiction is lacking.

Since granting Mitsui Taiwan's first motion to dismiss, the Court has had the opportunity to consider this issue in another case in this MDL. In assessing the allegations in the FAC of MetroPCS Wireless, Inc., the Court found that personal jurisdiction over Mitsui Taiwan would be appropriate because "Mitsui Taiwan 'purposefully directed' its conspiratorial activities towards the United States." Order Denying Mitsui Taiwan's Motion to Dismiss the First Amended Complaint, Master Docket No. 4126, at 7 (Nov. 9, 2011). Specifically, the Court found that "[t]he evidence . . . establishes that Mitsui Taiwan's conspiratorial activities were expressly targeted at the United States" and that "Mitsui Taiwan knew that its price-fixing activities would cause harm to Dell and other American companies." *Id.* at 7; *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) ("[The 'purposefully direct' test] requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." (internal quotation marks omitted)).

Because Electrograph's FAC is substantially similar to the FAC of MetroPCS,[2] both parties recognize that this Court's order in the MetroPCS case controls here. Mitsui Taiwan, however, contends that this Court's prior decision was erroneous, and that the evidence Electrograph (and MetroPCS) has presented to the Court is insufficient to bring Mitsui Taiwan under this Court's jurisdiction.

Having reviewed the documents submitted with Electrograph's opposition to Mitsui Taiwan's motion, the Court adheres to its earlier decision that personal jurisdiction exists over Mitsui Taiwan. This evidence supports Electrograph's allegation that Mitsui Taiwan participated in the price-fixing conspiracy. *See* Nikas Decl., Exh. 3 (document reflecting March 20, 2001, meeting with Chunghwa Picture Tubes); Exh. 29 (declaration of Chunghwa employee describing meetings and information exchanges with "Mitsui Busan (the Taiwanese agent for Sanyo Epson)"); Exh. 11 (document produced by Mitsui Taiwan reflecting meeting between Sanyo and Hitachi ). It also supports Electrograph's allegations that one of the goals of Mitsui Taiwan's participation in the conspiracy was to affect pricing

---

[2] Electrograph and MetroPCS are represented by the same counsel.

2

to Dell. *See*, *e.g.*, Nikas Decl., Exh. 5 (email from Mitsui USA stating that "we spoke with Samsung rep here and he mentioned that they did not move on Dell aggressive requests for November pricing, as a matter of fact he said that they actually RAISED pricing for one model . . . ."); Exh. 6 (email from Mitsui Taiwan directing Mitsui USA employee to "update your discussion with Dell . . . LG reduced the price to USD168 and got half the allocation"); Exh. 7 (email from Mitsui USA stating that "this is very frustrating because we know for fact that other 12.1 XGA suppliers are not meeting target and are in our same price range, and Dell has resorted to making claims to suppliers that they Dell have in fact received lower pricing that what we are fairly sure was proposed from LG or Samsung for AtlasII"); Exh. 8 (email from Mitsui USA stating that "I checked with LG Austin and he confirmed LG price stays at $168 with the same payment terms"). In the Court's view, this is sufficient to establish that Mitsui Taiwan's participation in the conspiracy was "purposefully directed" at the United States.

Mitsui Taiwan raises three arguments against this conclusion, but the Court does not find them convincing. First, Mitsui Taiwan argues that these documents do not establish that its actions were "expressly targeted" at the United States. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2005 WL 2988715, at *6 (N.D. Cal., Nov. 7, 2005) ("Although plaintiffs allege that defendants have committed an intentional act by way of their participation in a price-fixing conspiracy, plaintiffs fail to allege that defendants' conspiratorial acts were individually targeted towards any plaintiff whom defendants knew to be residents of North Carolina, Tennessee, or Vermont."). Unlike in *DRAM*, however, Electrograph has provided evidence that Mitsui Taiwan's participation in the conspiracy was expressly aimed, at least in part, at an American company.

Second, Mitsui Taiwan contends that Electrograph's evidence does not establish that its actions caused harmful effects in the United States. *See Northwest Aluminum Co. v. Hydro Aluminum Deutschland GmbH*, 2003 WL 23571744, at * (D. Or. Sept., 23, 2003) ("The parties have not cited, nor have I found, any case in which a district court has found the effects test satisfied for specific personal jurisdiction over a foreign corporation based upon harm caused only through an intermediary; here, [defendant's] subsidiary."). The Court disagrees. Electrograph's evidence suggests that Mitsui Taiwan's actions directly contributed to the conspiracy's effectiveness in the United States.

Finally, Mitsui Taiwan claims that "inter-affiliate price discussions" may not form the basis for

personal jurisdiction. *See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (per curiam) ("[T]he British parent's mere approval of a marketing scheme developed by its United States subsidiary does not constitute the kind of deliberate forum protection-invoking act which the law requires."). In this case, however, Mitsui Taiwan's actions amounted to more than "price discussions" or "approval of a marketing scheme." In the Court's view, they constituted precisely the type of deliberate, targeted acts that may form the basis for personal jurisdiction. *See CollegeSource*, 653 F.3d at 1076.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Mitsui Taiwan's motion to dismiss Electrograph's FAC. Docket No. 110 in 10-0117; Docket No. 4243 in 07-1827.

**IT IS SO ORDERED.**

Dated: February 1, 2012

SUSAN ILLSTON
United States District Judge